Paul BONICELLI, Jr., Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12688.

Court of Criminal Appeals of Oklahoma.

May 20, 1959.

 ██

Green, Green, & Green, by J. Fred Green, Sallisaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Paul Bonicelli, Jr., plaintiff in error, defendant below, who was charged by information in the District Court of Muskogee County, Oklahoma, with the crime of second degree burglary in violation of 21 O.S.1951 §§ 1435, 1436. In said information it was alleged that he forced the door of a certain warehouse and did feloniously steal therefrom four certain automobile tube tires. He was tried by a jury which found him guilty, but being unable to agree on the penalty, left the matter to the trial court, which fixed the penalty at three years in the state penitentiary. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

A brief résumé of the evidence is essential to a determination of the issues involved. The alleged offense of second degree burglary was charged to have been committed by the defendant, a policeman, on or about December 1, 1957, when the defendant allegedly removed some automobile tires from the warehouse of W. H. Harrower in Muskogee, Oklahoma, by breaking and entering a rear door. It appears word got around to the Chief of Police, Wehba, that the defendant, Bonicelli, had so deported himself. Upon being approached about the alleged crime, Bonicelli confessed to the Chief, and later, without knowledge that a tape recording was being made, confessed to the County Attorney, the Chief, and other persons that he had raised the back door of the warehouse at the bottom, pulled it outward, and slid through, stole the tires, and later put them on his automobile. The evidence discloses the tires were recovered from his automobile. The testimony of the state's witnesses disclosed that the four tires so recovered had been removed by someone from the warehouse, because they were short four tires.

 There was no independent evidence, other than the defendant's confession, which established the commission of the burglary. There was no evidence of any character to sustain the charge of breaking and entering the tire warehouse, other than that contained in the defendant's confession. There was evidence that Mr. Harrower lost some tires by some form of thievery, and that the tires were found on the defendant's automobile. While this evidence standing alone establishes that a crime was committed, it does not establish that the crime committed was that of burglary. The tires may have been, so far as the independent evidence is concerned, appropriated by larceny. Possibly a better case could have been established in larceny under the circumstances. In any event,

> "This court has repeatedly held that the corpus delicti cannot be established by the confession of the accused alone; that there must be independent evidence, either direct or circumstantial, of the corpus delicti before a conviction can be had."

Young v. State, 56 Okl.Cr. 375, 40 P.2d 686, 687; Blakemore v. State, 39 Okl.Cr. 355, 265 P. 152; Boggess v. State, 46 Okl. Cr. 283, 287 P. 764; Lake v. State, 59 Okl. Cr. 280, 57 P.2d 1199; Osborn v. State, 86 Okl.Cr. 259, 194 P.2d 176, 177. In Smith v. State, 47 Okl.Cr. 184, 287 P. 835, 837, this Court said in quoting from the brief of the Attorney General:

> " 'One of the material elements of the offense of which these defendants were convicted was the tapping or connecting with a pipe line or storage tank used for conduct or storage of crude oil, etc. In view of the fact that

no such tapping or connecting was proved in this case independent of the extrajudicial confessions of these defendants, the Attorney General has reached the conclusion that the evidence is, in law, insufficient.' "

This being the state of the record in this regard, this case must be reversed, with directions to try the defendant on some more appropriate theory in keeping with the facts. Love v. State, Okl.Cr., 319 P.2d 317.

The second contention that the admission of the transcripts of the tape recorded confession of defendant, hereinbefore referred to, was reversible error, is highly meritorious. The corpus delicti not being established, the confession was inadmissible for any purpose. Assuming, however, that such predicate had been laid, and the recording was otherwise admissible, it would not be improper to play it for the jury. But, to permit written transcripts thereof to be furnished to the jury violated the best evidence rule, since the recording was the best evidence. It also is contrary to the rules against repetition, improper emphasis, and hearsay. The reporter who identified the transcripts was not present when the recording was made and her transcript was pure hearsay. This procedure constituted shot-gun tactics by the state. As defense counsel urges, the court might as well have said: "Here is something good, we want you to have a double dose of it so you won't overlook it. We think it's importance deserves extra special treatment. Hence, we do not only present the recording but in transcripted form so you won't possibly forget it and hence we place the judicial finger of approval on it by way of emphasis." This too, was reversible error.

Finally, the jury was permitted to leave the court room to avoid the noise of the air conditioners which interfered with the acoustics of the court room. The trial judge directed them to a small room, attended only by the judge, the county attorney and assistant, and two counsel for the defendant, and with the doors closely guarded to keep out the public, the county attorney was permitted to play for the jury the tape recording with the additional aid of the written transcript thereof. Defense counsel objected vehemently, and suggested that the air conditioners be turned off and the trial proceed in its proper order. The objection was overruled, with exceptions allowed.

This procedure was highly improper as a violation of the defendant's constitutional right to a public trial. Art. II, Sec. 20, Okla.Const., provides, in part:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: * * *"

In Neal v. State, 86 Okl.Cr. 283, 192 P.2d 294, 295, in the body of the opinion, we said:

" 'The provision is one of the important safeguards that were soon deemed necessary to round out the Constitution, and it was due to the historical warnings of the evil practice of the Star Chamber in England. The corrective influence of public attendance at trials for crime was considered important to the liberty of the people, and it is only by steadily supporting the safeguard that it is kept from being undermined and finally destroyed. As the expression necessarily implies, a public trial is a trial at which the public is free to attend. It is not essential to the right of attendance that a person be a relative of the accused, an attorney, a witness, or a reporter for the press, nor can those classes be taken as the exclusive representatives of the public. Men may have no interest whatever in the trial, except to see how justice is done in the courts of their country.' "

We further said such an order not only affects the accused, but the public also is

interested in knowing how their servants, the judge, county attorney, sheriff, and court clerk conduct public business. Secluding the jury from the public in this instance was just as effective a denial of the defendant's constitutional right to a public trial as would an exclusion of the public from the court room. See also Davis v. United States, 8 Cir., 247 F. 394; People v. Murray, 89 Mich. 276, 50 N.W. 995, 14 L.R.A. 809; State v. Hensley, 75 Ohio St. 255, 79 N.E. 462, 9 L.R.A.,N.S., 277, holding the barring of the public from the testimony of one witness was a denial of the constitutional right of defendant to a public trial. Here, we are concerned with a portion of the entire trial, but the rule is the same. People v. Hartman, 103 Cal. 242, 37 P. 153, 154, wherein Judge Cooley in his work on Constitutional Limitations was quoted:

"'The requirement of a public trial is for the benefit of the accused,—that the public may see that he is fairly dealt with, and not unjustly condemned, and that the presence of interested spectators may keep his triors keenly alive to a sense of their responsibility, and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn hither by a prurient curiosity are excluded altogether.'"

See Neal v. State, supra, as to what persons may be lawfully excluded as spectators. To so shield the jury from the public, as was done herein, constituted fundamental reversible error.

The judgment and sentence is reversed and the cause remanded to the District Court of Muskogee County for a new trial in accordance with the principles expressed herein.

POWELL, P. J., and NIX, J., concur.