189 So.2d 890 (1966)
G.W. DUGGAN, Appellant,
v.
The STATE of Florida, Appellee.
No. G-246.
District Court of Appeal of Florida. First District.
September 15, 1966.
Albert Datz, Jacksonville and A.K. Black, Lake City, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Judge.
The appellant, a police officer, was charged with, tried, and convicted of the crime of accepting bribes, and has taken this appeal from the judgment of conviction entered by the Criminal Court of Record of Duval County.
The principal question raised by the appellant in this appeal is whether the trial court committed reversible error in admitting into evidence and sending into the jury room, when the jury retired to consider its verdict, certain written transcripts of tape recordings of conversations between the appellant and one McGee, who allegedly made the said bribery payments, some portions of which recordings were inaudible.
The said transcriptions were made by a court reporter who was not present when the alleged conversations were recorded and who had no personal knowledge of the matters dealt with therein. After admitting the tape recordings into evidence, the trial court also admitted into evidence nine copies of the said written transcripts made by the said court reporter and purporting to be transcripts of the said tape recordings. The said copies were given to the six jurors and one alternate juror to read as the tapes were played, and the jurors were permitted to take the said transcripts into the jury room when they retired at the end of the case to consider their verdict.
*891 The appellant's chief contention in this appeal is that the admission of the said transcripts was both erroneous and prejudicial, and that, even if the tape recordings were admissible, only the recordings themselves should have gone before the jury.
The appellant further contends that, according to the appellee's own evidence, the said transcripts "were at best copies and one man's opinion as to what the tapes said."
At the trial the court reporter, as a witness for the appellee, testified that he had made the transcripts in the trial court room on the previous Saturday morning by using earphones and a tape recorder. Of the three transcripts of the conversations between the appellant and McGee, the recording of the conversation that took place on February 23, 1964, the court reporter testified "still contains inaudible remarks in it" but as to the other conversations he understood "all the way through"; and that the court reporter had earlier made other transcripts of the recordings by using just a tape recorder; that there were "some variations" between such transcripts and the transcripts admitted in evidence; and that there were other similar differences throughout the tape. Immediately following such testimony, the defense counsel formally objected to the admission into evidence of the transcripts made on the preceding Saturday. The trial court overruled the said defense objection and admitted the last-mentioned transcripts "for the purpose of aiding the Jury in hearing and listening to these tapes. * * *" Nine copies of the said transcripts were admitted in evidence by the court, which said that "* * * since we have seven (7) Jurors here and naturally have to have it before them and I see no reason why we can't introduce the nine (9) copies in evidence." The prosecuting attorney asked that the three tape recordings be played for the jury, and handed to each of the jurors an individual copy of the three transcripts made by the court reporter as aforesaid. The jurors were instructed to put their receivers on and use the transcripts "to go by." The jury followed such instructions and the three tape recordings were played for them. Immediately after the playing of the recordings, the appellee rested its case. In his oral argument to the jury, incidentally, the prosecutor declared that the tape recording of the conversation on February 23, 1964, "is really the critical thing in this matter" because this was where the said McGee stated that he was giving the "payoff" to the appellant. When the court submitted the case to the jury, the jurors were permitted, over objection by the defense, to take with them into the jury room their copies of the transcripts of the tape recordings. The jury retired to the jury room and subsequently returned a verdict that the appellant was guilty of the crime of accepting bribes as charged in the information.
It is our opinion that the written transcripts of the three tape recordings were inadmissible in evidence under several established rules of evidence: permitting the transcripts to be furnished to the jury violated the best evidence rule, since the tape recordings themselves were the best evidence; the court reporter who made the transcripts was not present when the recordings were made, and hence his transcripts constituted pure hearsay and were inadmissible under the hearsay rule; and the jury's use of the transcripts violated the rules against undue repetition and improper emphasis. In addition, the transcript of the recording of February 23, 1964, concerning the critical question of the "pay-off" and containing the "inaudible" portions of the recording, was clearly inadmissible as violative of other fundamental precepts in the law of evidence, as we shall discuss later in this opinion.
While there are innumerable decisions in this and other jurisdictions recognizing and applying the aforementioned rules of evidence, the case involving a situation that seems most nearly analogous to that in the case at bar is Bonicelli v. State, 339 P.2d 1063 *892 (1959), in which the Court of Criminal Appeals of Oklahoma held as follows:
"The * * * contention that the admission of the transcripts of the tape recorded confession of defendant * * * was reversible error, is highly meritorious. * * * Assuming * * * the recording was otherwise admissible, it would not be improper to play it for the jury. But, to permit written transcripts thereof to be furnished to the jury violated the best evidence rule, since the recording was the best evidence. It is also contrary to the rules against repetition, improper emphasis, and hearsay. The reporter who identified the transcripts was not present when the recording was made and her transcript was pure hearsay."
With reference to the danger of repetition and over-emphasis presented by the admission of the transcripts, the Oklahoma court said:
"* * * [a]s defense counsel urges, the (trial) court might as well have said: `Here is something good, we want you to have a double dose of it so you won't overlook it. We think its importance deserves extra special treatment. Hence, we do not only present the recording but in transcripted form so you won't possibly forget it and hence we place the judicial finger of approval on it by way of emphasis.' This too, was reversible error."
In addition to urging in his appellate brief that the admission of the transcripts violated the above-mentioned evidentiary rules, the appellant contends that the trial court's action in permitting the jurors to retain their copies of the transcripts and take them to the jury room was very improper, especially since neither the tapes nor any means of playing them were furnished to the jury, so that the transcripts, which had no evidentiary standing of their own and which had been received only as an aid to understanding the tapes, were accorded more dignity than the tapes themselves. In this appeal, however, we need not pass upon this contention, since we have held that the transcripts were inadmissible in evidence at the appellant's trial.
Particularly strong reasons exist, of course, for holding the transcript of the tape recording made on February 23, 1964, inadmissible as evidence against the appellant. As mentioned above, the court reporter who made that transcript was not present when the recording was made and when the recorded conversation took place, and he admitted on the witness stand that some portions of the recording were inaudible. Under no recognizable theory could such a transcript be received in evidence. The court reporter could not testify as one who had witnessed the events recited in the transcript, nor could he testify as an expert witness who is professionally skilled in the understanding of indistinguishable taped conversations. Since the conversation recited in that particular transcript pertained to the most critical issue in the prosecution's case against the appellant  the alleged bribery "pay-off" payments  the highly prejudicial effect of admitting the said transcript in evidence is obvious.
Among other points raised by the appellant in this appeal, he claims that the trial court erred in not permitting his counsel to ask prospective jurors on the voir dire examination whether or not they had read in the newspapers certain prejudicial comments that had been made by the prosecuting attorney before the trial, and also the appellant claimed that the prosecuting attorney made certain inflammatory arguments in his summation to the jury. We need not here pass upon the validity of these contentions in view of our holding above that the trial court committed error in admitting into evidence the above-discussed transcripts of the tape recording.
Our failure to discuss and pass upon the prejudicial effect of the prosecuting attorney's said newspaper statements and his said summation must not, however, be taken as an indication that we condone the use of such tactics by the prosecution or defense *893 in a criminal case, or, for that matter, by any person in a civil case. While good citizens will applaud the zealous efforts of a prosecutor to secure convictions and protect the public, especially in police scandal cases like the instant one, we must never forget that an even higher principle is at stake in a criminal prosecution  the precious and basic right of every citizen not to be convicted and deprived of his liberty except upon a fair trial conducted in accordance with the precepts of justice and due process of law. As the courts of this state and nation have held in innumerable decisions, all of the parties to causes, both civil and criminal, are entitled to nothing less than the cold neutrality of an impartial jury. What we said in Pensacola Transit Co. v. Denton, Fla.App., 119 So.2d 296 (1960), applies with equal force in criminal cases, namely:
"Under any court system it is difficult to attain a true and just result even under the most favorable conditions because of the frailty of man and his subjectivity to various prejudices and other influences that may warp his judgment in attempting to attain the ultimate truth in a given factual situation. The injection by either party to a cause, whether deliberate or inadvertent, of any such improper influence in a jury trial is a distinct disservice to the administration of justices, and lawyers, as officers of the courts, and the courts, on their own motion if need be, must be ever vigilant to see that no such influence creeps into the proceedings in even the slightest degree and subverts the noble purpose of our court system to provide `justice under law.'"
For the foregoing reasons, the judgment of conviction appealed from herein must be and it is reversed, and the cause remanded for a new trial in accordance with the views herein expressed.
Reversed and remanded with directions.
RAWLS, C.J., and JOHNSON, J., concur.