### Salem
DAVID ALLEN ARNOLD

v.

COMMONWEALTH OF VIRGINIA

No. 0948-85

Decided June 2, 1987

COUNSEL

Jonathan M. Venzie, for appellant.

Russell C. Williams, Assistant Attorney General, (Mary Sue Terry, Attorney General, on brief), for appellee.

**COLEMAN, J.** — Appellant, David Allen Arnold, was convicted of distributing more than one-half ounce but not more than five pounds of marijuana in violation of Code § 18.2-248.1(a)(2). On appeal, he challenges the trial court's ruling which allowed the jury to use a typewritten transcript while listening to a recorded conversation between himself and an informant who had been wired with a recording device. Appellant also challenges the admission into evidence of the informant's recorded oral report made at the end of the conversation. We find that the trial court did not abuse its discretion in allowing the jury to use the typewritten transcript. We find, however, that the court erred by admitting the informant's report, but that because such evidence was merely cumulative, its admission was harmless.

On August 10, 1984, Investigator Glenn Hyatt placed a "body wire" on Gerald Wayne Kennon, an informant, who was to make a drug purchase from appellant. Hyatt monitored and recorded the conversation transmitted during the transaction. Immediately following the purchase, Kennon summarized the events, which summary was recorded on the tape. At trial, the Commonwealth proffered the tape recording and presented a typewritten transcript of the recorded conversation. Defense counsel objected on hearsay grounds to the use of the transcript and to admission into evidence of that portion of the recording containing Kennon's summation. The trial judge conducted a hearing outside of the jury's presence and ruled that the transcript could be used by the jury as an aid to following the recorded conversation, after receiving cautionary instructions from the court. The trial judge also ruled that the tape recording would be admitted in its entirety, including Kennon's summation of the transaction.

## I. Transcript

Whether a jury may use a typed transcript as a visual aid to understanding while listening to recorded evidence is a question of first impression in Virginia. It is, however, an established practice in the federal courts and several state courts. *See United States v. Slade*, 627 F.2d 293 (D.C. Cir.), *cert. denied*, 449 U.S. 1034 (1980); *United States v. Hall*, 342 F.2d 849 (4th Cir.), *cert. denied*, 382 U.S. 812 (1965); *Golden v. State*, 429 So. 2d 45 (Fla. Dist. Ct. App.), *petition for rev. denied*, 431 So. 2d 988 (Fla. 1983); *People v. Feld*, 305 N.Y. 322, 113 N.E.2d 440 (1953). The

federal and state courts which have considered the issue have determined that whether the jury may use a typed transcript as a visual aid while listening to a recording is a matter within the sound discretion of the trial judge. *United States v. Long*, 651 F.2d 239, 243 (4th Cir.), *cert. denied*, 454 U.S. 896 (1981); *United States v. John*, 508 F.2d 1134, 1141 (8th Cir.), *cert. denied*, 421 U.S. 962 (1975). We agree and hold that the decision is one of discretion for the trial judge and will be overturned on appeal only for a clear abuse of that discretion. *See Justus v. Commonwealth*, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981).

In *United States v. John*, the eighth circuit set forth the criteria considered in determining whether a trial judge abused his discretion in permitting the use of a transcript to aid the jury in following tape recorded evidence. In *John*, the trial judge reviewed the transcript, found that it accurately reflected the recorded communications and was prepared with care. The trial judge also determined that the transcript was necessary to enable the jury to intelligently follow the recorded conversation. Before the judge distributed the transcript, he instructed the jury to use it only as an aid in listening to the recording and to base its verdict upon what they heard and not what they read, and to listen to the declarants' manner and emphasis of speech so as to understand what was being said. Finally, the jury was not permitted to use the transcript during deliberation. Because of the judge's careful and considered use of the transcript, the eighth circuit held that there was no abuse of discretion. *John*, 508 F.2d at 1141.

Substantially similar precautions were taken in the present case. The actual tape recording was at times difficult to understand, not because of the special language involved as in *John*, but because of the quality of the recording. The transcript was necessary to enable the jury to intelligently understand and follow the recorded conversation. The use of a transcript was preferable to other available alternatives to facilitate hearing and following the recorded conversation. To simply have played the recording for the jury one time, without the benefit of the transcript, would have rendered some of the conversation ineffective as evidence. Conversely, to have played the tape several times would have prolonged the trial and possibly caused prejudice to the defendant by excessive repetition and undue emphasis of the government's evidence. *United States v. Lawson*, 347 F. Supp. 144, 148-49 (E.D. Pa. 1972).

■ Before distributing the transcript, the trial judge informed the jury that the transcript was not evidence and cautioned them to determine what was on the tape from what they actually heard, not from what they read. The judge's warnings properly instructed the jury as to the permissible use of the transcript. We must presume the jury followed the trial judge's instructions and made proper use of the recorded evidence and the typewritten aid before them. *See LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied*, 464 U.S. 1063 (1984).

As a last precaution, the transcript was collected from the jurors as soon as the tape recording was played. Copies of the transcript were not available to the jury during their deliberation. The jurors' only exposure to the transcript occurred while they listened to the tape.

■ We find that the procedure followed by the trial judge was adequate to ensure the proper use of the transcript. In the absence of a stipulation as to the transcript's accuracy, the trial judge should verify the accuracy prior to submitting the transcript to the jury. Verification can be made by the trial judge or by receipt of evidence from the transcriber, or both. However, even though in the present case the trial judge did not make a factual determination of the accuracy of the transcript by actually comparing the transcript to the recorded conversation, it is not error to use the transcript when its accuracy is supported by the record as in the situation before us. *See Slade*, 627 F.2d at 303. The accuracy was not challenged in any material respect. The appellant was present at trial and had the ability to point out discrepancies between the transcript and the tape recording. The fact that no challenges of substance were made or have been called to our attention supports the conclusion that the transcript was substantially accurate. *United States v. Collazo*, 732 F.2d 1200, 1203-04 (4th Cir. 1984), *cert. denied*, 469 U.S. 1105 (1985). Having failed to designate any discrepancy of substance between the transcript and the recorded conversation either here or in the trial court, appellant waived his opportunity to challenge the transcript's accuracy. *Id.* at 1204.

■ We also reject appellant's contention that use of the transcript amounted to the use of hearsay evidence. Hearsay evidence is defined as a spoken or written out-of-court declaration or non-verbal assertion offered in court to prove the truth of the matter

asserted therein. *Ingram v. Commonwealth*, 1 Va. App. 335, 338, 338 S.E.2d 657, 658 (1986). The transcript was not evidence. It was merely intended for and used by the jury as an aid to understanding while they listened to the recording. The tape recorded conversation was the evidence, the admissibility of which is not challenged. The Court of Appeals of New York, faced with a similar situation, held:

> The recordings were the best evidence of the conversation, the transcript added nothing. To allow the court and jurors to hold in their hands a transcript as they listened to the playback of the records was no different than allowing them to have, in an appropriate case, a photograph, a drawing, a map, or a mechanical model, any of which have long been recognized as an assistance to understanding.

*People v. Feld*, 305 N.Y. 322, 331-32, 113 N.E.2d 440, 444 (1953).

Appellant relies on *Duggan v. State*, 189 So. 2d 890 (Fla. Dist. Ct. App. 1966) and *Bonicelli v. State*, 339 P.2d 1063 (Okla. Crim. App. 1959) to support his position that it was error to allow the jury to use the transcripts. In *Duggan* the transcript was actually admitted into evidence, and the jury was allowed to take the transcript into the jury room during deliberation. 189 So. 2d at 891. In the present case the transcript was not admitted into evidence nor was it allowed in the jury room during deliberations. The transcript served to aid the jury's understanding of evidence, and nothing more. *Duggan* is distinguishable and not controlling.

*Bonicelli* held that it was error to allow a written transcript to be furnished to the jury, but it is unclear whether the transcript was actually admitted into evidence. Assuming it was used in exactly the same manner as the present case, we are not persuaded by the reasoning of the Court of Criminal Appeals of Oklahoma. We conclude that the decisions which we have considered that approve the practice are more compelling. Thus we reject appellant's argument that we should follow the *Bonicelli* court's holding.

Appellant's confrontation clause argument under the sixth amendment was first raised on appeal and thus we will not entertain the issue. Rule 5A:18.

In summary, we find no merit in appellant's arguments that the trial court committed reversible error by allowing the jury to use the transcript. The transcript was not admitted in evidence, it was not hearsay, and it was necessary as an aid to follow and understand the recorded evidence. The trial judge cautioned the jury as to the proper use of the transcript and the record supports its accuracy.

## II. Informant's Report

Following the taped transaction between Kennon and appellant, Kennon orally summarized the events, which summary was recorded on the tape. The trial judge admitted the entire tape recording into evidence including the summation. Appellant objected to the admission of Kennon's summation on the ground that it was hearsay.

Both the Commonwealth and the appellant agree that Kennon's summation did not constitute an admissible prior consistent statement because it was not offered to rehabilitate Kennon's testimony following an attack on his credibility. *See Clere v. Commonwealth*, 212 Va. 472, 473, 184 S.E.2d 820, 821 (1971). The Commonwealth does assert, however, that the summation was admissible as an excited utterance or present sense impression exception to the rule against hearsay. We do not agree.

The Commonwealth, as proponent of the evidence, had the burden of showing that the declaration fell within an exception to the rule against hearsay. *Doe v. Thomas*, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984). In Virginia, excited utterance and present sense impression are often discussed together as part of the "*res gestae* rule." *See* C. Friend, *The Law of Evidence in Virginia* §§ 236-37 (2d ed. 1983). Their common denominator is that they involve situations in which words accompany an incident and serve to explain that incident. Spontaneity, which must be present in both exceptions, serves as the guarantee of trustworthiness. *Id.* The standard governing admission of hearsay evidence under a *res gestae* exception is summarized as:

> utterances prompted by a startling event, and not the product
> of premeditation, reflection, or design . . . . The spontaneity
> of the utterance is deemed to guarantee its trustworthiness,
> even though it is hearsay evidence which would otherwise be

excluded. The declaration must be made at such time and under such circumstances as to preclude the presumption that it is the result of deliberation.

*Nicholaou v. Harrington*, 217 Va. 618, 622, 231 S.E.2d 318, 321-22 (1977) (citations omitted).

Kennon's summation, contrary to the Commonwealth's position, did not constitute an excited utterance or a present sense impression. Not only was the event preceding the statement not startling or unexpected, it was actually a designed plan—a circumstance tending to negate any spontaneity in Kennon's statement. The summation was an act of deliberation. As a statement totally lacking spontaneity, the summation was not admissible under the excited utterance exception or the present sense impression exception to the hearsay rule. *See Pepoon v. Commonwealth*, 192 Va. 804, 809, 66 S.E.2d 854, 857 (1951).

■ Although the trial court erred in admitting Kennon's summary into evidence, we must consider its effect or impact upon appellant's conviction. "[W]e must determine on the basis of 'our own reading of the record and on what seems to us to have been the probable impact . . . on the minds of the jury' . . ." *Schenble v. Florida*, 405 U.S. 427, 432 (1972), whether the admission of the summary was sufficiently prejudicial to appellant to require reversal. *See Boykins v. Commonwealth*, 210 Va. 309, 313, 170 S.E.2d 771, 774 (1969); Code § 8.01-678. At trial, the evidence against appellant consisted primarily of Kennon's testimony and the actual tape recording of the transaction between them. Kennon gave a detailed account of going to appellant's house and purchasing an ounce of marijuana. The tape of the transaction between Kennon and appellant revealed the following: Kennon said, "I thought I'd come by here and get an ounce from you." Appellant went outside to his car, then returned to the house. At this point Kennon said, "Good God, what a bag. Um, smells good." Kennon testified that he then counted out to appellant $100 which the police had supplied to him for the express purpose of buying marijuana. Immediately after the transaction Kennon delivered a bag of marijuana to Investigator Hyatt, which was retained, analyzed, determined to be marijuana and admitted in evidence. Investigator Hyatt testified that just before the transaction he wired Kennon and searched him and his car and there was no

marijuana on Kennon or in his vehicle.

The evidence admitted at trial, excluding Kennon's taped summation of the transaction, clearly implicated appellant and established that the object of the sale was marijuana rather than something else. The post-transaction summation was merely cumulative and could not have prejudiced appellant. The evidence presents no reasonable possibility that the jury found the Commonwealth's case more persuasive because the summation was erroneously admitted. *See Rozier v. Commonwealth*, 219 Va. 525, 528, 248 S.E.2d 789, 791 (1978). Thus, we find the error was harmless beyond a reasonable doubt because the statement was neither prejudicial to appellant nor did it affect the verdict.

In summary, we find that the trial judge did not abuse his discretion in allowing the jury to use the transcript, and the admission of Kennon's post-transaction statement was harmless error. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., concurred.

Barrow, J., dissenting.

I do not agree that admission of the informant's recorded summary of his meeting with the appellant was harmless error beyond a reasonable doubt. The informant's credibility was crucial to the Commonwealth's case, and the recorded summary served to corroborate his testimony. I cannot say that it had no impact on the jury's decision.

The appellant's conviction of distribution of marijuana rested on the testimony of the informant. The informant's testimony was corroborated in part by the tape recording of his conversation with the appellant when the informant allegedly made the purchase. The informant's recorded summary of what took place, the admission of which the majority holds was harmless error, also served to corroborate his testimony. The summary corroborated elements of the informant's testimony which were not corroborated by the tape recording of the meeting. To that extent the summary was more than cumulative and prejudicial. *See Hubbard v. Commonwealth*, 174 Va. 493, 494, 6 S.E.2d 760, 760 (1940).

The recorded conversation does not reveal all that occurred at the meeting. At least seven portions of it were inaudible. Six of the inaudible portions occurred when the appellant was speaking. Much of the conversation related to matters other than the alleged marijuana purchase, and the conversation which did relate to the purchase was of limited significance. Most of that conversation was by the informant, and the few words spoken by the defendant indicated little concerning the nature of the meeting.

The informant introduced the subject of the conversation by saying, "I thought I'd come by here and get an ounce from you," to which the appellant responded, "I never did get rid of my whole bottle."

The conversation went on to other matters; after several inaudible comments, the appellant said, "I'll be back in a minute." At that point the informant said that the appellant went out to his automobile and went into its trunk. The recording, however, does not confirm this fact.

The appellant's next comment is inaudible but is followed by the statement, "Come on watch till noon." Next, the informant said, "Good God, what a bag! Um, smell's (sic) good." The defendant responded, "Last I got 'til next week." Finally, the informant said: "I'm sure I'm going to knock a big hole into this. I've done pretty good this week. Twenty, fifty, seventy, eighty, ninety, a hundred."

The conversation between the informant and the appellant is notable for what it does not say. At no point is the word marijuana or any of its colloquial synonyms used. The informant does refer to "a bag" and something that "smell's (sic) good." However, in response to the informant's inquiry about "an ounce" the defendant told him that he did not "get rid of my whole bottle." The jury had to speculate about the nature of the substance involved. Was it marijuana, PCP, cocaine, or illegal whiskey?

The informant testified at trial that it was marijuana, and, most importantly, in his summary made following the transaction, said that he gave the appellant one hundred dollars in ten dollar bills for one ounce of marijuana. He also said that the appellant went outside after being told that the informant wanted to purchase an ounce of marijuana. Thus, the summary added information not

included in the recording of the conversation between the appellant and the informant.

The informant's credibility was a critical issue. He is a convicted felon who has served time in the Virginia correctional system for killing his wife. Character witnesses testified that his testimony was not worthy of belief. He was alone with the appellant at the time of the purchase.

I cannot say, beyond a reasonable doubt, that the informant's recorded summary, which we agree was inadmissible, did not enhance the informant's credibility before the jury. Therefore, I would reverse the conviction and remand the proceeding for a new trial.