In re Adoption of DeVore: DeVore et al., Appellees, v. Rios, Appellant.

(No. 6125—Decided November 17, 1959.)

*Mr. Gale R. King*, for appellees.
*Messrs. Key, Butler, Harrison & Carlile* and *Mr. Larry H. Snyder*, for appellant.

Donahue, J. This case comes to the Court of Appeals on three assignments of error. These assignments for all practical purposes can be reduced to a single question. Was the consent of the father necessary to the adoption under the law and the facts?

The law is set forth in Section 3107.06, Revised Code, which reads as follows:

"No final decree or interlocutory order of adoption shall be entered by the Probate Court unless there is filed with the court written consents to the adoption * * *:

"*   *   *

"(B) By each of the living parents, adult or minor, except as follows:
"*   *   *

"(4) If it is alleged in the petition that one or both of the parents have willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition, the court shall cause notice of the filing of said petition and the allegations of such failure to be given such parents as provided in Sections 2101.26 to 2101.28, inclusive, of the Revised Code. After such notice has been given, the court shall determine the issue as to such failure to properly support and maintain the child. The consent of a parent found by the court to have willfully failed to properly support and maintain the child for such period shall not be required.
"*   *   *."

The facts as revealed by the testimony before the Honorable Lawrence A. Ramey, general referee appointed for the purpose of hearing such testimony, are, insofar as is necessary for consideration on appeal, as follows:

The father and mother of the child involved were married in 1952 and set up residence in California. Both were working. At the time of the child's birth on October 15, 1956, they had accumulated some debts but very little property. The petitioners, as grandparents, were present in California at the time of the birth. The testimony revealed that from October 15 to December 16 the grandparents "contributed" to the infant's support. On the latter date, the grandparents, the mother and the child returned to Columbus, leaving the father behind—to finish up a year's work so he would be able to collect vacation pay and other benefits to which he would then be entitled. He followed his family by the end of January 1957. There is no evidence of his supporting the child between December 16 and the end of January. From the end of January to July 21, 1957, except for a month in the hospital, the father turned over his endorsed pay check to the child's mother. The testimony is in conflict as to how the pays were spent, the wife claiming that he told her how to spend it, and the husband

denying this. However, the wife did admittedly receive the check, and, so far as we know, turned none of it over to her parents for the support of either the child or herself and husband. In so far as the records show, they were all guests of her parents. No demand for any money at this time shows on the record.

By July 21, 1957, the father and mother had agreed to disagree, and the father returned to California.

From July 21, 1957, to April 19, 1958, the husband admittedly forwarded $135. In the meantime he had called Columbus several times, and in the course of conversations the wife had asked for money. During this period also, the wife had sued for and been granted a divorce and custody of the child. No alimony or maintenance was awarded, since there was no personal jurisdiction of the father.

On May 7, 1958, under the Uniform Dependents Act, the father, by stipulation, was ordered to pay $30 per month for support of the child. Anticipating the order, the father forwarded $25 on May 5. On June 6, he paid $25. On July 7, he paid $35. On August 11, he paid $30. On September 5, he paid $30. On October 9, he paid $50.

On October 23, 1958, an amended petition for adoption was filed by the grandparents. Meanwhile, the mother of the child had left it with her parents and moved back to California.

At the time of the filing of the petition, the child was two years and eight days old.

Under these circumstances, can it be said that the father "willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition"?

Under our form of civilization we feel that the parents have a paramount right to their children, and will be deprived of neither the rights or obligations entailed without the strongest of reasons. This statute was obviously enacted to take care of a situation where a parent, or both parents, had completely abandoned their rights and obligations. Do we have this situation here?

The father had supported the child (with "contributions") during its first two months of life. During the next month and

a half no support was given. During the next five and two-thirds months he turned his check over to his wife. Whether he told her what to do with it or not, she had the check and could have and should have used part of it for the child. If there was any failure here, it was the wife's.

During the next nine months the father forwarded only $135. However, there is no real evidence that he was able to send more. But for the next six months he sent every cent he was ordered to send, with a little extra the last month.

We can come to no other conclusion from the above than that for approximately thirteen and two-thirds months he fulfilled his obligations fully; that during nine months he failed to supply enough to "support" the child, but did send some support, and there is no evidence of willful failure during this period.

All in all, the child being only a few days over two years old, it is impossible for us to see any evidence to support the finding of the referee that this father willfully failed to properly support the child for more than two years, so as to circumvent the specific requirement of the statute, which otherwise requires his consent for adoption.

The question of custody is not before us. The custody of the child was awarded by the Court of Common Pleas, Division of Domestic Relations, which retains jurisdiction as to custody.

The judgment of the Probate Court granting adoption is reversed and the petition dismissed.

*Judgment reversed.*

Fess, P. J., and Smith, J., concur.

Fess and Smith, JJ., of the Sixth Appellate District, and Donahue, J., of the Seventh Appellate District, sitting by designation in the Tenth Appellate District.