HARLEYSVILLE MUTUAL INSURANCE CO., APPELLEE, *v.* SANTORA ET AL., APPELLANTS.

(No. 43526—Decided February 18, 1982.)

*Mr. Arthur J. Stern,* for appellee.
*Mr. Kent R. Minshall, Jr.,* and *Mr. Steven L. Wasserman,* for appellants.

DAY, P.J. This is an appeal by defendant-appellant, Virginia Santora (defendant), from a court of common pleas judgment for plaintiff-appellee, Harleysville Mutual Insurance Company (plaintiff), in a declaratory judgment action. That action was filed to determine plaintiff's liability under an uninsured motorist clause of an automobile insurance policy issued by the plaintiff to the defendant.

Defendant filed an answer, counterclaim, amended counterclaim, and demand for jury trial. In the amended counterclaim, defendant asked the court to determine plaintiff's liability under the automobile insurance policy and also to determine whether the plaintiff had acted in bad faith while handling a claim by defendant's passenger, Esther Hummel, against the defendant.

Defendant assigns three errors.

Assignment of Error No. I

"The trial court's verdict in favor of the Appellee-Plaintiff is manifestly against the weight of the evidence."

Assignment of Error No. II

"The trial court erred in the admission of Exhibit 13, the transcript of a tape recording."

Assignment of Error No. III

"Under O.R.C. 2721.10, the right of trial by jury is preserved in declaratory judgment actions. Therefore, the trial court erred in refusing to allow Appellant's jury demand."

For reasons adduced below the judgment is reversed and remanded for a new trial in accordance with this opinion.

I

On September 28, 1977, defendant owned a 1976 AMC Pacer. That automobile was covered under an automobile insurance policy issued by plaintiff. The policy contained protection against uninsured motorists, including "hit-and-run" vehicles, provided there was contact between defendant's car and the "hit-and-run" vehicle.

## II A

The trial began without a jury on January 22, 1981, despite defense objections.

The evidence was that at approximately 7:30 p.m., on September 28, 1977, defendant and a passenger in her car were in an accident as she was driving over the Fulton Road Bridge. Defendant testified that a collision occurred minutes after she started up from a stop at a traffic signal light. She noticed the bright lights of another vehicle rapidly approaching hers. She said she felt a thud when the other vehicle hit hers in the left rear. She had been driving in the curb lane prior to the contact between the vehicles. Defendant's automobile jumped a ten to twelve inch curb and came to rest between a light pole and a fence. Defendant claimed the cause of the accident was an unidentified motorist who hit her vehicle in the left rear section. Defendant and her passenger suffered bodily injuries as a result of the accident. Both required hospitalization.

Defendant's car was totaled.

Photographs taken at the accident scene and the junkyard where the defendant's car was towed following the accident do not show dramatic damage, if any at all, to the left rear section where the "hit-and-run" vehicle allegedly struck the defendant's car. This is impressive but not conclusive on the question of contact between the vehicles. Given the defendant's testimony a factual question is made for resolution by the trier of the facts. The extensive overall damage shown by the photo evidence is not a result of the initial contact.

Although the defendant testified that she felt a thud, she could not give any description of the other vehicle nor could she remember the lights of the other vehicle going past hers.

Defendant's passenger, Hummel, remembers events somewhat differently. She said defendant was driving in the outer lane, not the curb lane, before the accident; that as the bright lights of the approaching vehicle came closer and closer, the defendant turned the wheel to go into the curb lane, and that the defendant's car then jumped the curb and hit the light pole. Hummel said that she did not feel a thud prior to the defendant's vehicle hitting the light pole, but would not definitely state that the approaching car had not come in contact with the defendant's vehicle.

Hummel had filed a suit against the defendant claiming it was the defendant's negligence that had caused the accident. Prior to trial she settled her claim against defendant for injuries she suffered in the accident. Hummel signed a release following the settlement and discharged the defendant from any further claims involving the incident.

Bill Bawroski, an independent insurance adjuster working for the plaintiff, investigated the accident. Bawroski's conclusion was that there had been no contact between the defendant's vehicle and the "hit-and-run" vehicle.

As part of his investigation, Bawroski interviewed the defendant in the hospital approximately one week after the accident. Bawroski made a recording of part of his conversation with the defendant. The recording was admitted into evidence. Over strong defense counsel objections, the transcript was also admitted even though its accuracy was in dispute. During the recorded conversation a colloquy between the defendant and Bawroski included this question and answer:

"Q. Now we have lights and we're not certain from which direction. Virginia was there ever a bump from the other car? Did you ever feel any contact with him?

"A. To tell you the truth I don't know."

Defendant later testified positively to a thud (see III *infra*).

On January 27, 1981, the trial court entered a judgment for plaintiff at defen-

dant's costs. There was no specific ruling on defendant's counterclaim.

## II B

Although defendant's counterclaim was not specifically ruled on by the trial court, this case is not a candidate for dismissal under Civ. R. 54(B).

The controlling case is *Wise* v. *Gursky* (1981), 66 Ohio St. 2d 241, 243 [2 O.O.3d 233]:

"We hold that a judgment in an action *which determines a claim in that action and has the effect of rendering moot all other claims in the action as to all other parties to the action* is a final appealable order pursuant to R.C. 2505.02, and Civ. R. 54(B) is not applicable to such a judgment." (Emphasis added.)

Counts one and two of defendant's amended counterclaim were rendered moot by the trial court's finding for plaintiff. Defendant had asked the court to determine that there had been contact between defendant's vehicle and the "hit-and-run" vehicle and that she was entitled to benefits under the policy. The court, by entering a judgment for plaintiff, determined there was no contact and that defendant was not entitled to benefits under the policy.

Count three alleged that the plaintiff acted in bad faith while negotiating a settlement with Hummel and exposed the defendant to an excess liability claim of $235,000. But on May 5, 1980, Hummel signed a release following a $7,000 settlement with plaintiff and discharged the defendant from all claims involving the accident. A court approved stipulation dismissing Hummel's suit was received for filing on May 30, 1980. It follows that whatever merit defendant's count three might have had, the resolution of Hummel's claim sapped it of harm and mooted it before the trial began on January 22, 1981.

Thus, all three counts of the amended counterclaim were moot prior to, or rendered moot by, the judgment for plaintiff; Civ. R. 54(B) is not applicable.

## III

Assignment of Error No. I challenges the trial court's "verdict" as against the weight of the evidence.

The crucial issue is whether there was contact between defendant's car and the "hit-and-run" vehicle.

Plaintiff introduced evidence to show that there were no marks on defendant's car in the area where the defendant claimed it had been hit by the other vehicle. Hummel testified that she did not feel a thud before the defendant's car hit the light pole, but would not conclude definitely that there had been no contact with the vehicle approaching from the rear. The insurance adjuster's investigation led him to conclude that there had been no contact between the defendant's car and another vehicle. On the other hand defendant recalled a thud attributed by her to the car approaching from the rear.

On this record, a trier of fact could reasonably conclude either way on the definitive issue of contact. And the trial court cannot be faulted for deciding as it did if it had the right to decide at all. For there was competent credible evidence to support its conclusion.

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 280 [8 O.O.3d 261].

The first assignment of error is not well taken assuming the trial court properly undertook the role of fact finder despite the jury demand.[1]

---

[1] Because it was the defendant who asked for a jury trial here, and because there was conflicting evidence on the critical issue, it is unnecessary to decide whether there can be

## IV

Under Assignment of Error No. II defendant claims the admission of the written transcript of a tape recording violates the "best evidence" rule of Evid. R. 1002. That rule provides:

"To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

The original recording was available and had been received into evidence. Therefore, exceptions to Evid. R. 1002 found in Evid. R. 1004 do not apply.[2]

The question whether the admission of a written transcript in addition to the original recording is reversible error seems to be one of first impression in Ohio. The only case found to contain a transcript admitted with a recording was *State* v. *James* (1974), 41 Ohio App. 2d 248 [70 O.O.2d 456]. However, the problem raised by admitting both a transcript and an original tape was not addressed in that case.

Cases from other jurisdictions reveal at least two viewpoints on the issue. One is that transcripts could be admitted as a listening aid provided their accuracy was not questioned, *United States* v. *Turner* (C.A. 9, 1975), 528 F. 2d 143, 167; *People* v. *Feld* (1953), 305 N.Y. 322, 331-332, 113 N.E. 2d 440, 444. The other is that the admission of a transcript when the original

recording is available violates the best evidence rule and is reversible error, *Bonicelli* v. *State* (Okla. Crim. App. 1959), 339 P. 2d 1063, 1065; *Duggan* v. *State* (Fla. App. 1966), 189 So. 2d 890, 891.

In *United States* v. *Turner, supra,* at 167, the trial judge's decision to allow the jury to read a transcript while listening to a recorded telephone conversation was upheld. However, the trial judge emphasized to the jury that only the recordings were evidence. The transcripts were furnished as a listening aid and were collected from the jury immediately after the playing of the recording.

In *People* v. *Feld, supra,* at 331-332, 113 N.E. 2d at 444, each juror and counsel was allowed to hold a transcript while all listened to the playing of a recorded conversation. The transcripts had been made by an official stenographer who testified that they were accurate "word for word." The appellant objected to the admission but did not attack the accuracy of the transcript. The objection was based on the best evidence rule. The use of the transcript as a listening aid was upheld.

On the other hand, admission of a transcript was held to be reversible error in *Bonicelli* v. *State, supra,* at 1065. In that case the transcript of a recorded conversation was made by a court reporter and admitted along with the recording. The admission of the transcript was held to violate the best evidence rule and rules against hearsay, undue repetition, and improper evidence. The court concluded:

---

harmless error in denying a plaintiff's request for a jury if the plaintiff's evidence would warrant a directed verdict for the defendant.

[2] "Rule 1004

"Admissibility of other evidence of contents

"The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

"(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

"(2) Original Not Obtainable. No original

can be obtained by any available judicial process or procedure; or

"(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be subject of proof at the hearing, and he does not produce the original at the hearing; or

"(4) Collateral matters. The writing, recording, or photograph is not closely related to a controlling issue."

"As defense counsel urges, the court might as well have said: 'Here is something good, we want you to have a double dose of it so you won't overlook it. We think it's [*sic*] importance deserves extra special treatment. Hence, we do not only present the recording but in transcripted form so you won't possibly forget it and hence we place the judicial finger of approval on it by way of emphasis.' "

The *Bonicelli* case was used as the basis of the decision in *Duggan* v. *State, supra,* at 891-892. In *Duggan* the admission of a written transcript of a tape recording between the appellant and another person was held reversible error on the ground that its admission violated the best evidence rule and rules against hearsay, undue repetition, and improper emphasis. The transcript had been prepared by a court reporter and its accuracy had been questioned by defense counsel prior to its admission, *id.* at 891.

The *Bonicelli-Duggan* cases are not binding but their reasoning is persuasive especially in their focus on unnecessary emphasis and the best evidence. Moreover, the results in *Turner* and *Feld* do not necessarily conflict with *Bonicelli-Duggan*. The transcripts were used only as listening aids in *Turner* and *Feld* and were collected from the jury once their usefulness as aids ended.

In the present case, the transcript was not prepared by an objective third party but by the partisan Bawroski, a party to the conversation and the maker of the recording. Although Bawroski stated the transcript was "correct," the first statement on the tape recording, a woman's voice saying "I am scared" does not appear on the transcript of the tape. The trial judge acknowledged that he also heard the statement which did not appear on the transcript.

Furthermore, the original recording was available and audible. The transcript should not have been admitted because it was secondary evidence. Moreover, it could not capture or preserve nuance, voice tone, emphasis, evasion, faltering, or emotion. This underwrites the status of the transcript as *not* the best evidence of the conversation between Bawroski and the defendant.

This "not the best" status was reinforced by the admitted flaws in the transcription. Nor was there any waiver. For the defense was zealous in its objections to the inaccuracies of the transcription. The admission of the written transcript was reversible error.

The second assignment of error is well taken.

V

Assignment of Error No. III poses the question whether upon timely demand the right to a jury trial is preserved in actions for declaratory judgment.

Defendant's demand for a jury trial, endorsed on her answer and counterclaim, was timely under Civ. R. 38(B). Nevertheless, the trial judge proceeded to hear the case without a jury after noting the defendant's objection.

The critical issues in the case raised obvious factual questions proper for jury determination (see II, *supra*).

In *Schaefer* v. *First National Bank* (1938), 134 Ohio St. 511, 517-518 [13 O.O. 129], G.C. 12102-9 was found to preserve "the right of a trial by jury in an action for a declaratory judgment in all cases in which the right exists." G.C. 12102-9 has been superseded by R.C. 2721.10. The substantive parts of the two code sections are identical:

G.C. 12102-9. Determination of issues of fact.

"When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

R.C. 2721.10. Determination of issues of fact.

"When a proceeding under sections

2721.01 to 2721.15, inclusive, of the Revised Code, involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

Subsequent to the passage of R.C. 2721.10, the Supreme Court of Ohio confirmed the proposition that when a determination of facts is necessary before rights can be declared, that factual determination can be made in a declaratory judgment action, *Ohio Farmers Indemn. Co.* v. *Chames* (1959), 170 Ohio St. 209, 215 [10 O.O.2d 164]. And the right to a trial by jury is preserved, *DeVore* v. *Mutual of Omaha* (1972), 32 Ohio App. 2d 36, 37 [13 O.O.2d 376]. In the face of the defendant's timely demand for a jury to decide the determinative factual issue in the litigation, it was reversible error for the judge to refuse it.

Assignment of Error No. III is well taken.

Judgment is reversed and remanded for a new trial in accordance with this opinion.

*Judgment reversed and cause remanded.*

STILLMAN, J., concurs.

PARRINO, J., concurs in part and dissents in part.

STILLMAN, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

PARRINO, J., concurring in part and dissenting in part. While I concur in the majority's disposition of appellant's first and third assignments of error and in the reversal of the judgment below, I must respectfully dissent from the disposition of the second assignment of error.

Evid. R. 1002 sets out the requirement that the "original" of a recording be produced to prove its contents while Evid. R. 1003 permits the use of a "duplicate" in lieu of an original. A transcript of a recording is not, of course, an original. Nor is it a duplicate within the meaning of Evid. R. 1001(4) because it is not produced by a mechanical, physical, or chemical reproduction method.

Therefore, admission into evidence of a transcript in place of the original in situations other than those designated under Evid. R. 1004 violates the best evidence rule. *Stewart* v. *Dameron* (C.A. 5, 1972), 460 F.2d 278, 279.

However, the Evidence Rules do not by their terms prohibit a transcript from being used *along with* an original recording and the overwhelming weight of authority is in support of such a procedure. See *United States* v. *Slade* (C.A.D.C. 1980), 627 F.2d 293; *United States* v. *Rochan* (C.A. 5, 1977), 563 F.2d 1246, 1251; *United States* v. *Onori* (C.A. 5, 1976), 535 F.2d 938, 946-949; *United States* v. *Turner* (C.A. 9, 1975), 528 F.2d 143, 167-168; *United States* v. *Hawke* (C.A. 10, 1974), 505 F.2d 817, 823; *United States* v. *McMillan* (C.A. 8, 1974), 508 F.2d 101, 105; *United States* v. *Carson* (C.A. 2, 1972), 464 F.2d 424, 436-437; *United States* v. *Hall* (C.A. 4, 1965), 342 F.2d 849, 853; *Baysinger* v. *State* (1977), 261 Ark. 605, 613, 550 S.W. 2d 445, 449-450; *State* v. *Hauck* (1976), 172 Conn. 140, 374 A.2d 150, 155; *People* v. *Feld* (1953), 305 N.Y. 322, 113 N.E. 2d 440. Contra *Duggan* v. *State* (Fla. App. 1966), 189 So.2d 890; *Bonicelli* v. *State* (Okla. Crim. App. 1959), 339 P.2d 1063, 1065 (dictum as to admissibility of transcript since original recording was itself inadmissible).[3]

---

[3] See Louisell & Mueller, 5 Federal Evidence, at 361-386, Section 563 (1981) (hereinafter Louisell & Mueller) for extensive discussion of the use, consistent with parallel Federal Rules of Evidence, of both transcripts and electronically-enhanced rerecordings in the courtroom.

Upon first impression, one might be inclined to conclude that no purpose would be served by utilizing a transcript of an original recording once the original itself has been produced. However, there are many situations in which the use of a transcript may enhance the evidentiary utility of the original and thus serve to promote the just determination of issues. Where a transcript is used along with an original recording, the trier of fact has two potential sensory channels, auditory and visual, by which to perceive the evidence and the transcript is of particular assistance to the perceiver whose visual acuity is superior to his auditory capabilities.

A transcript is especially useful where the recording is of poor quality, garbled, contains background noises or voice-over interruptions, or has been recorded at an off-speed. See *United States* v. *Onori, supra,* at 947; *United States* v. *Wilson* (C.A. 5, 1978), 578 F.2d 67, 69; *United States* v. *Rochan, supra,* at 1251; Louisell & Mueller, *supra,* note 5, at 368. Individual idiosyncratic and dialectical variations of speakers can add to the perceptual difficulties of the listener, see *United States* v. *John* (C.A. 8, 1975), 508 F.2d 1134, 1141, while defective playback equipment can create further problems.

Moreover, the use of a transcript as an aid while listening to a recording avoids the necessity of replaying the recording many times, which not only is time-consuming but also tends to overemphasize the significance of the recording in comparison to other evidence. *United States* v. *Turner, supra,* at 168.

While it is true, as the majority suggests, that a transcript cannot capture intangibles such as voice tone, emphasis, *etc.,* these are not lost where the recording is produced along with the transcript. Furthermore, any potential hearsay problem is minimized where the trier of fact has the original statement, *i.e.,* the recording, in court, and is able to compare it against the alleged reproduction, *i.e.,*

the transcript, both having been properly authenticated.

The courtroom use of a transcript as suggested here would have the same status as the use of a blackboard, chart, interpreter, or other courtroom aid. *United States* v. *Watson* (C.A. 10, 1979), 594 F.2d 1330, 1336; *United States* v. *John, supra,* at 1141; *United States* v. *Turner, supra,* at 167.

In the remand of this action, the jury will be the trier of fact. It is therefore necessary to elaborate a bit on the procedures which should be followed where a transcript is submitted for use as a courtroom aid.

Unless the parties are willing to stipulate to the accuracy of a transcript, the trial court, pursuant to its authority under Evid. R. 104(A) to resolve threshold questions of admissibility, should determine whether a transcript can be used in accompaniment to a recording. Where reasonable minds could differ as to the accuracy of any portions of the transcript, the court should delete inaccurate portions or, in its discretion, reject the use of the transcript entirely. See *United States* v. *Carson, supra,* at 436-437. Where audible portions of the recording are not included in a transcript, the court should order them added upon motion of any party.

Furthermore, the court, in its discretion, could grant a continuance to enable an opposing party to study the transcript and recording and to submit suggested revisions.

When satisfied of the substantial accuracy of the transcript, the court should permit the jurors, in open court and under the trial judge's direction, to follow the transcript while listening to the recording.

However, in keeping with the assumption that the transcript of the recording is not evidence but merely a listening aid, the court, upon request, should instruct the jury that the transcript itself is not to be considered as evidence.

Unless all parties mutually agree to the contrary, the transcript should not be permitted into the jury room. If both the recording and transcript are given to the jury, they might merely reread the transcript without replaying the recording. They might thereby accord the transcript evidentiary value beyond its intended use as a listening aid. A preferred procedure would be to permit the jury, under the court's direction and control, to use the transcript upon request when and if they wish to have the recording replayed. Where, however, a recording and a transcript thereof have been submitted to the jury, the determination of whether such action constitutes prejudicial or harmless error rests with a reviewing court.

The transcript should in all cases be preserved along with the recording for purposes of appellate review.

Since both the recording and transcript were preserved as a part of the record in this case, I have had the opportunity to listen to the recording and compare it with the transcript and I find that the transcript is a substantially accurate account of what is contained in the recording. While the recording was audible, I found that its quality was such that it would require several replays before its contents would be fully comprehended by the listener. I further found that use of the transcript permitted me to grasp the contents of the recording within a minimal time and without repeated recourse either to the recording or the transcript.

Though a barely audible initial segment of the recording was not transcribed, the defendant failed to request an amendment to the transcript so as to include additional audible portions of the recording.

I, therefore, conclude that the use of the transcript by the trial court as an aid while listening to the recording was both useful and proper, and that the preservation of the transcript as part of the record did not prejudice the defendant.

Accordingly, I must dissent from the majority's disposition of the second assignment of error. Otherwise I concur in the judgment of reversal.