OPINION
Defendant-appellant, Eric R. Miller, appeals his conviction on two counts of complicity to trafficking in cocaine and one count of trafficking in cocaine, both in violation of R.C. 2925.03. Appellant raises two assignments of error contending, first, that the trial court erred by restricting his cross-examination of the state's primary witness, and second, that the trial court erred by failing to restrict the use of transcripts created from certain audiotapes. Finding neither assignment of error meritorious, we affirm the trial court.
In the spring of 1997, the London Police Department ("the LPD") conducted an undercover drug operation, ("the 152 investigation") which resulted in the arrest of several persons, including appellant, on felony drug charges. During the 152 investigation, the LPD enlisted the assistance of a confidential informant, Bert W. Hatfield ("Hatfield"), to purchase drugs while wearing a body wire. On July 22, 1997, appellant was indicted on four felony drug charges. Each of the transactions upon which appellant was indicted consisted of a drug buy secretly recorded by Sgt. David R. Litchfield ("Litchfield") of the LPD from the transmission from a body wire worn by Hatfield.
Appellant pled not guilty to the charges, and a jury trial commenced on September 22, 1997 in Madison County Common Pleas Court. Before the jury was seated, the trial court ruled on two motions in limine. First, appellant made a motion addressing the use of transcripts that had been created by the LPD from the audio recordings made by Hatfield's body wire.
 Yes, your honor, would be making today's date [sic] a motion in limine regarding the transcripts of the tape. I would ask for if [sic] the Court is going to allow the prosecution to use those transcripts as an aid to listening to the tapes. Number one, they be kept from the jury when they finally deliberate. We would ask ideally the transcripts not be used at all. If the Court decides in fact in its discretion they will be used, we would ask for a cautionary instruction that the tapes are the best evidence.
The trial court ruled that it would allow use of the transcripts by the jury when the tapes were played at trial, but would instruct the jury that the transcripts were not evidence and that the audiotapes themselves were the best evidence.
The second motion in limine was made by the state on behalf of Hatfield. The state requested that the trial court prohibit appellant from questioning Hatfield on cross-examination about the fact that he had once entered a drug treatment center in lieu of a conviction. In 1993, Hatfield had been charged with conveyance of a controlled substance into a detention facility in violation of R.C. 2921.36, a fourth-degree felony, and opted for rehabilitative treatment in lieu of a conviction pursuant to R.C.2951.04. Stating that evidence rules addressing credibility specifically limit cross-examination using extrinsic evidence of criminal convictions, the trial court granted the state's motion in limine.
Pursuant to appellant's motion in limine, just before the transcripts were handed out and the audiotapes were played, the court instructed the jury:
 Ladies and gentlemen of the jury, the transcripts of the transaction you are about to be handed are not evidence. The tapes are the best evidence of the transaction, and what is on the tapes constitutes the evidence. You should rely upon what you hear rather than what you read if there is a difference between the two (emphasis added).
The jury was then provided with a stapled group of papers containing transcripts of all four recorded buys. Immediately after the tapes were played, the prosecutor reviewed portions of the tapes and transcripts with the testifying witness in order to identify the voices on the audiotape. During this time the jurors still had copies of all of the transcripts in hand, and counsel for appellant lodged an objection. Appellant's counsel objected to the fact that the jury was reviewing portions of the transcripts that did not correspond to the audiotape being discussed. Counsel for appellant requested that the court limit the jury's access to the transcripts and only allow the jurors to have the transcript in hand while the audiotapes were being played. In overruling the objection, the court stated:
 I've given the limited instruction. It's an appropriate instruction, but I am not going to take the transcripts out of their hands. * * * They have the right to use the transcript to understand the tapes they've heard and to get some sense of flow of it. To cut them off like that would be inappropriate.
At the conclusion of the trial, the court again instructed the jury:
 Ladies and gentlemen, with respect to the transcripts that you've had, I again reiterate the transcripts of the transactions are not evidence. The tapes are the best evidence of the transactions, and what is on the tapes constitutes the evidence. The transcripts were provided to assist you here and understand the tapes. You should rely upon what you heard on the tapes rather than what you read in the transcripts, if there was a difference (emphasis added).
On September 23, 1997, the jury returned guilty verdicts on three of four charges. The court sentenced appellant to an aggregate sentence of forty-two months in the Orient Correctional Reception Center.
In his first assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN GRANTING THE STATE'S MOTION IN LIMINE.
Citing Ohio Evid.R. 608(B), appellant contends that the trial court abused its discretion in not allowing appellant's counsel to inquire into the prior conduct of Hatfield as it related to the 1993 conveyance charge. Prior to trial, appellant argued that such evidence was relevant to illustrate Hatfield's "character" to the jury. On appeal however, appellant argues that the prior charge is probative of Hatfield's "truthfulness" and that appellant should have been allowed to inquire into this on cross-examination.
We note at the outset that a "trial court has broad discretion in the admission and exclusion of evidence and an appellate court will not reverse the judgment of the trial court for failure to admit or exclude evidence unless the trial court has clearly abused its discretion and the party complaining has been materially prejudiced thereby." State v. Withers (1975), 44 Ohio St.2d 53,55, (citations omitted). Additionally, the concept of the trial court's discretion within context of character evidence has been expressly built into the language of Ohio Evid.R. 608(B).[1]
Ohio case law interpreting Evid.R. 608(B) permits the use of specific instances of conduct which did not result in a conviction for purposes of impeachment, subject to certain limitations. Specifically:
 particular instances of conduct, though not the subject of a criminal conviction, may be inquired into on cross-examination of a principle witness. Effective cross-examination demands that some allowance be made for going into matters of this kind. But because the potential for abuse is high, through unfair prejudice, confusion of issues, and misleading of the jury, safeguards are erected in the form of requiring that the instances inquired into must be clearly probative of truthfulness and untruthfulness.
State v. Williams (1981), 1 Ohio App.3d 156, 157 (emphasis sic).
Thus, counsel may seek to impeach a witness on cross-examination by questioning the witness about prior instances of misconduct only when it relates directly to the truthfulness of the witness. See State v. Shields (1984), 15 Ohio App.3d 112, 113, and Ohio Evid.R. 608(B). However, as this court has stated, "the decision to admit evidence of prior misconduct of a witness for impeachment under Evid.R. 608(B) is a matter that rests within the sound discretion of the trial court." Weidner v. Blazic (1994), 98 Ohio App.3d 321, 327, citing Shields.
Following a thorough review of the record, we find that the trial court did not abuse its discretion in prohibiting appellant's counsel from inquiring into Hatfield's 1993 charge of conveyance, or Hatfield's decision to opt for treatment in lieu of a conviction, on cross-examination. Neither act is "clearly probative" of Hatfield's capacity for "truthfulness." Even if they were, the record reveals that appellant was not materially prejudiced the court's limitation of cross-examination. Withers at 55. Appellant's counsel had ample opportunity to impeach Hatfield's credibility and attack his capacity for truthfulness. Specifically, on cross-examination appellant was permitted (1) to inquire into a falsified police report filed by Hatfield, (2) to inquire into the favorable treatment and privileges Hatfield had received from the LPD in exchange for becoming a confidential informant, and (3) to inquire into the "deal" Hatfield struck with the Madison County Prosecutor to avoid falsification charges in exchange for testimony against appellant. Given the extensive cross-examination of Hatfield, we find that appellant was not materially prejudiced. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error, appellant questions
 WHETHER THE TRIAL COURT SHOULD HAVE LIMITED THE JURY'S REVIEW OF TRANSCRIPTS OF AUDIO TAPES TO A PERIOD OF TIME CONTEMPORANEOUS TO THE PLAYING OF SAID AUDIO TAPES, AND DOES SUCH USE OF TRANSCRIPTS UNDULY PREJUDICE THE DEFENDANT-APPELLANT.
In this assignment of error, appellant contends that the transcripts of the drug buys were not evidence, and because the jury's review of the transcripts was not contemporaneous with the playing of the tapes, he was unduly prejudiced and thereby prevented from receiving a fair trial. Because the transcripts were not admitted into evidence, nor provided to the jurors during their deliberations, and because the court properly instructed the jurors about their limited use on more than one occasion, we find appellant's argument unpersuasive.
Appellant cites State v. Rogan (1994), 94 Ohio App.3d 140, for the proposition that transcripts are not evidence, and Harleysville Mut. Ins. Co. v. Santora (1982), 3 Ohio App.3d 257, for the proposition that the use of transcripts is totally inadmissible. We do not disagree with appellant that, in general, transcripts are not evidence. As noted above, in the case sub judice the transcripts did not become evidence because they were never admitted into evidence. However, this court disagrees with appellant's contention that the use of transcripts was totally improper.
This court has listened to the audiotapes created from Hatfield's body wire and admittedly, we find they are of very poor quality. Several portions of the tapes are garbled, full of static, or unintelligible. However, it is well-settled that the decision about whether to allow audiotapes into evidence lies within the sound discretion of the trial court, and because appellant raises no assignment of error with respect to the admission of the tapes, we find none. Rogan at 151.
However, with respect to use of transcripts, Ohio case law provides that a jury may read a transcript of an audiotape, and use the transcript as a "listening aid." See State v. Blakenship (May 22, 1985), Medina App. No. 2050, unreported. This is especially true when one of the persons on the tape recording also testifies at trial so as to give independent support to the taped testimony. Rogan at 149. The case law is less forgiving, however, when a transcript is provided to a jury during deliberations. Id. at 154. The rationale behind such a rule is that the use of transcripts as a "listening aid" is momentary and fleeting, but to allow them in the jury room during deliberation elevates them to the "status of substitute evidence." Id. at 154 (citations omitted).
In the case sub judice, copies of the transcripts were used only as listening aids and collected from the jury immediately upon the close of the state's direct examination of Hatfield. Because the transcripts were in the jurors' hands for such a limited period of time, this court fails to see any demonstrable prejudice resulting from allowing the jurors to hold all of the transcripts while each audiotape was played. Additionally, because the transcripts were not admitted into evidence, or taken into the jury room during deliberations, they were not allowed to rise to level of "substitute evidence." Finally, as requested by appellant's counsel in his motion in limine, the court gave repeated cautionary instructions to the jury that the transcripts were not evidence and that the audiotapes were the best evidence of the transactions.
Given the poor quality of the audiotapes, we find the carefully measured use of the transcripts, coupled with the repeated cautionary instructions to the jury from the court, sufficiently eliminated any prejudicial error that might have otherwise resulted from the use of these transcripts. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] Ohio Evid.R. 608(B) provides:
 Specific instances of conduct. Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence, They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into in cross-examination of the witness * * *. (Emphasis added.)