OPINION
{¶ 1} These three appeals arise from decisions made in the consolidated cases set forth above.
 {¶ 2} However, the primary issues of all three appeals come from Richland County Common Pleas Case No. 97-11-H.
 {¶ 3} Case 96-254-H arises out of claims to ownership of 60 head of cattle, the progeny thereof, the milk produced and security interests therein and is only tangentially related to the primary issues of 97-11-H.
 {¶ 4} Case 96-278-H was a suit on an account essentially for cattle feed brought by Moorman Mfg. 5 Star, S.M.A. and is related to the cattle ownership claims of 96-254-H, but is only indirectly related to the primary issues of 97-11-H.
 {¶ 5} Case 96-501-D is similar to 96-278-H. It was brought by Shelby Grain and Feed, Inc. and involves money due for feed and again is related to the issues of 96-254-H but only incidentally related to the primary dispute involved in 97-11-H.
 {¶ 6} We shall therefore address the issues of the various appeals arising out of the primary rulings of 97-11-H as the issues involved in the consolidation of the other cases are not the subject of these appeals in the direct sense, but are affected by the primary determination of the issues of 97-11-H.
 STATEMENTS OF FACTS {¶ 7} Freeman Swank, Sr., (now deceased), and his wife, Rheabelle Swank are the parents of Robert L. Swank, E. Clark Swank and Freeman Swank, Jr.
 {¶ 8} The parents had acquired several farm properties beginning in the 1950's. Such property was at all times titled solely in the parents' names.
 {¶ 9} Two of their three sons, Robert and E. Clark Swank worked on the farms and also resided there, Robert from 1965 and Clark from 1968. The third son, Freeman Swank, Jr., was not employed on the farms except during high school and short periods thereafter.
 {¶ 10} The parents accumulated considerable debt over the years and became in default on the first mortgage. They contemplated ceasing the farming operation. This caused a family dispute between the parents and Appellees Robert and E. Clark.
 {¶ 11} No written agreements existed between the parents and Appellees.
 {¶ 12} Freeman Swank, Jr. purchased the defaulted first mortgage and became the assignee thereof.
 {¶ 13} Robert and E. Clark asserted in 97-11-H that they expected to share in an inheritance of the farms along with their brother Freeman Swank, Jr. pursuant to promises made constituting an oral partnership and other claims. They also claimed interference with their expectancy of inheritance by their brother, unjust enrichment and other assertions.
 ASSIGNMENTS OF ERROR {¶ 14} The Assignments of Error in Case 2004CA0110 are:
 {¶ 15} "I. THE COURT OF COMMON PLEAS' [SIC] ERRED IN DENYING PARENTS THEIR RIGHT TO TRIAL BY JURY IN PHASE I OF THE TRIAL. SEE ENTRY BIFURCATING TRIAL OF EQUITABLE ISSUES P. 1.
 {¶ 16} "II. THE COURT OF COMMON PLEAS' [SIC] FINDING THAT THE PLAINTIFFS' CONTRACTUAL CLAIM GIVES THEM AN INTEREST IN THE DECEMBER 1995 VALUE OF THE SWANKAIRE FARM IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. SEE DECISION OF PHASE ONE OF BIFURCATED TRIAL. P. 7-8.
 {¶ 17} "III. THE COURT OF COMMON PLEAS' FINDING THAT THE PLAINTIFFS' CONTRACTUAL CLAIM GIVES THEM AN ENFORCEABLE INTEREST IN SWANKAIRE FARM BEFORE THE DEATH OF THE PARENTS IS CONTRARY TO LAW. SEE DECISION OF PHASE ONE OF BIFURCATED TRIAL P. 7-8."
 {¶ 18} The Assignments of Error in Case 2004CA0111 are:
 {¶ 19} "I. THE TRIAL COURT ERRED:
 {¶ 20} "A. IN NOT INCLUDING PREJUDGMENT INTEREST AT THE STATUTORY RATE ON THE CONTRACTUAL AMOUNTS OF EQUITY AWARDED TO PLAINTIFFS AS OF THE END OF 1995 ($136,350.06 TO ROBERT SWANK AND $113,625.05 TO CLARK SWANK) IN THE SUBJECT REAL PROPERTY; AND
 {¶ 21} "B. IN NOT INCLUDING THE LEGAL DESCRIPTION OF THE FARM REAL PROPERTY TO WHICH THE EQUITABLE LIENS ATTACHED AND IN NOT FIXING THE LIS PENDENS PRIORITY DATE IN THE JUDGMENT SO THAT, WHEN RECORDED AND THE APPELLATE PROCESS IS COMPLETED, THE RECORDED JUDGMENT WOULD PROPERLY EVIDENCE PLAINTIFFS' EQUITABLE LIENS IN ALL NECESSARY RESPECTS.
 {¶ 22} "II. ALTERNATIVELY, IF ASSIGNMENT OF ERROR NO. I IS OVERRULED, THE TRIAL COURT ERRED OR ABUSED ITS DISCRETION IN NOT CONSIDERING AND AWARDING APPROPRIATE TITLE INTERESTS IN THE SUBJECT FARM REAL PROPERTY WITH R.C. SEC. 2703.26 LIS PENDENS DATES TO PLAINTIFFS ROBERT SWANK AND CLARK SWANK IN ACCORDANCE WITH THE FINAL ADJUDICATION BELOW THAT THEIR SHARES OF EQUITY AT THE END OF 1995 WERE 42% AND 35% RESPECTIVELY.
 {¶ 23} "III. IF THIS COURT REVERSES OR MODIFIES THE IN REM AWARD OF EQUITABLE INTERESTS IN THE SUBJECT REAL PROPERTY IN FAVOR OF ROBERT AND CLARK SWANK SO AS TO UNDERMINE THE RATIONALE FOR THE SEPTEMBER 25, 2003 DISMISSAL OF THE PARENTS OR TO JEOPARDIZE THE TWO BROTHERS' RIGHTS TO OTHERWISE RECOVER FROM DEFENDANTS FREEMAN JR. AND MARY JANE SWANK, HIS WIFE, THEN THE TRIAL COURT ERRED IN DISMISSING THE PARENTS `FROM FURTHER PARTICIPATION IN THIS CASE.'"
 {¶ 24} The Assignments of Error in Case 2004CA0112 are:
 {¶ 25} "I. THE LOWER COURT ERRED IN DETERMINING PLAINTIFF-APPELLEES HAVE A LEGALLY ENFORCEABLE INTEREST IN THE REAL ESTATE AND FARM CHATTELS OWNED BY DEFENDANT-APPELLANTS.
 {¶ 26} "II. THE LOWER COURT ERRED IN DENYING DEFENDANT-APPELLANTS RIGHT TO A JURY TRIAL IN PHASES ONE AND TWO OF THE BIFURCATED TRIAL.
 {¶ 27} "III. THE LOWER COURT ERRED IN DETERMINING THE VALUE OF THE NET EQUITY OF THE REAL ESTATE AND FARM CHATTELS OWNED BY DEFENDANT-APPELLANTS AS OF DECEMBER 1995.
 {¶ 28} "IV. THE LOWER COURT ERRED IN DETERMINING THE VALUE OF PLAINTIFF'S INTEREST IN THE NET EQUITY OF THE REAL ESTATE AND FARM CHATTELS OWNED BY DEFENDANT-APPELLANTS AS OF DECEMBER 1995.
 {¶ 29} "V. THE LOWER COURT ERRED IN DETERMINING MERGER OF SUBORDINATE INTERESTS OCCURRED WITH RESPECT TO THE INTEREST IN THE REAL ESTATE ACQUIRED BY THE DEFENDANT-APPELLANTS FREEMAN J. SWANK, JR. AND MARY JANE SWANK.
 {¶ 30} VI. IN RENDERING ITS DECISION, THE LOWER COURT ERRED IN NOT ISSUING FINDINGS OF FACT AND CONCLUSIONS OF LAW.
 {¶ 31} "VII. THE LOWER COURT ERRED IN NOT GRANTING COUNSEL FOR THE DEFENDANT-APPELLANTS A CONTINUANCE OF THE TRIAL DATE IN PHASE TWO OF THIS MATTER."
 {¶ 32} Each of the various Assignments of Error result from the decisions of Judge Grey, sitting by assignment.
 {¶ 33} In the initial decision on Phase One of the bifurcated trial, the following factual findings were made which are critical to the ultimate issues of these appeals:
 {¶ 34} 1. The claims of a partnership between the two sons and their parents is not supported by the evidence.
 {¶ 35} 2. The sons were not hired hands as they used their own credit for farm operations.
 {¶ 36} 3. The conduct of the parties by clear and convincing evidence indicates an agreement or contract between the parties, even though oral.
 {¶ 37} 4. "The sons wished to receive compensation for their many years of effort on behalf the farm and the parents wished to preserve whatever capital value might be left in the farm. The sons assert a claim against the parents as their consideration for their past performance on behalf of the farm and the farming operation. The parents claim that the farm had no value and that if it were not for the intervention of Freeman Jr. and Mary Jane Swank it would have been lost to foreclosure. Simply put, the sons say we want our share. The parents say there is no value to be shared; a share of zero is zero. This is the crux of this case."
 {¶ 38} The conclusions reached from these facts were:
 {¶ 39} "Therefore this court finds as follows. Robert and Clark Swank had a contractual interest in the Swankaire farms based on their performance over the course of several decades. Freeman Swank Sr. and Rheabelle Swank had a duty to honor their agreement with their sons. The sons' contractual claim gave them an interest in the value of the Swankaire farm at the time the working agreement between the parties became non-performing. The court finds, based on the evidence and testimony of the parties, that time was December, 1995. The court further finds that Freeman Swank, Jr. and Mary Jane Swank took their interest with full knowledge of, and subject to, the claims of Robert and Clark Swank.
 {¶ 40} "This court makes no finding as to the monetary value, if any, of Robert or Clark's interest. That matter will be presented to the jury in the next stage of this matter. All matters as to value and ownership, including the funds from the sale of the cows escrowed in the Shelby Bank, shall be presented to the jury. The jury will be asked to decide the following questions.
 {¶ 41} "1. What was the value, if any, of the Swankaire farms in December, 1995?
 {¶ 42} "2. What was the value, if any, of Robert Swank's interest in the Swankaire farms.
 {¶ 43} "3. What was the value, if any, of Clark Swank's interest in the Swankaire farms."
 {¶ 44} In the court's decision solely on Phase Two, the court determined:
 {¶ 45} "In phase two of this case, the court determined that it would hear evidence on three questions:
 {¶ 46} "1. What was the value, if any, of the Swankaire farms in December, 1995?
 {¶ 47} "2. What was the value of Robert Swank's interest in the Swankaire farms in December, 1995.
 {¶ 48} "3. What was the value of Clark Swank's interest in the Swankaire farms in December, 1995.
 {¶ 49} "This matter was tried to the court over several days, and a transcript of that hearing was prepared for the court's post trial review. Based on the evidence, testimony, exhibits, and post trial memoranda of counsel, the court finds as follows.
 {¶ 50} "In answer to Question one, the court finds that the net equity value of the Swankaire farms in December, 1995,

 {¶ 51} "Land 956,000.00
 {¶ 52} "Chattel 214,000.00
 __________
 {¶ 53} "Total 1,170,000.00
 {¶ 54} "Outstanding Debt 845,357.00
 __________
 {¶ 55} "Net Equity $324,643.00
 {¶ 56} "In answer to Question 2, the court finds Robert's interest at 42% of the
net equity $136,350.06
 {¶ 57} "In answer to Question 3, the court finds Clark's interest at 35% of the net
equity $113,625.05"
 {¶ 58} The court also addressed merger, or lack thereof, in affecting the priority positions due to judgment liens of creditors. The effect of lis pendens also was reviewed.
 (2004CA00110) I {¶ 59} The first Assignment in Case 04-CA-110 asserts a denial of the requested jury trial when, in Phase I, the court proceeded to try equitable issues pursuant to an order of bifurcation which stated:
 {¶ 60} "* * * this court orders that the trial of issues in this case be bifurcated and that the issue of Plaintiffs' equitable interests be tried to the court. Further proceedings will, of course, depend on the outcome of that trial."
 {¶ 61} In the first instance as to bifurcation, no objection was raised.
 {¶ 62} An appellate court need not consider an error which a party complaining of the trial court's judgment could have called but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Williams (1977),51 Ohio St.2d 112, syllabus paragraph one.
 {¶ 63} Ordinarily, errors which arise during the course of a trial and which are not brought to the attention of the court by objection or otherwise are waived and may not be raised on appeal. Stores Realty Co.v. City of Cleveland (1975), 41 Ohio St.2d 41. See also: Atwood v. Leigh
(1994), 98 Ohio App.3d 293.
 {¶ 64} The issue then becomes not the order of bifurcation but whether the issues tried in Phase I could be tried to the bench rather than to the jury.
 {¶ 65} This also differs from the ultimate decisions rendered by the court after conclusion of the Phase I evidence.
 {¶ 66} Also, while the court made certain value determinations after Phase II without a jury, contrary to the Phase I judgment entry, no assignment of error by Appellants in this appeal (04-CA-110) as to the lack of a jury in Phase II was raised, but only as to Phase I.
 {¶ 67} As to trial of equitable issues, several cases are instructive:
 {¶ 68} Rutledge v. Wallace (Oct. 7, 2002), Carroll App. No. 02AP0770, 2002-Ohio-5372, held:
 {¶ 69} "R.C. 2311.04 provides what types of issues must be tried to a jury. It states:
 {¶ 70} "Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived or unless all parties consent to a reference under the Rules of Civil Procedure.
 {¶ 71} "All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.
 {¶ 72} "The right to a jury trial does not exist if the relief sought is equitable rather than legal. Taylor v. Brown (1915), 92 Ohio St. 287,110 N.E. 739."
 {¶ 73} Also, the Ohio Supreme Court in Erie Insurance Group v. Fisher
(1984), 15 Ohio St.3d 380, stated:
 {¶ 74} "Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure. 'All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.' (Emphasis added.)
 {¶ 75} "In Cochrane, this court held that in an action whereby the insurer merely sought a determination of its obligations to the insured and sought the avoidance and cancellation of the policy as to the insured, and did not seek a decree relating to "the recovery of money only," the question was properly one for the court. It was further held to be the province of the court to ascertain the facts necessary to construe the contract and determine the obligations of the insurer. However, the right to trial by jury does exist in a declaratory judgment action which is between an insurer and the insured or the injured party, and which is for the recovery of money. See Ohio Farmers Indemnity Co.v. Chames (1959), 170 Ohio St. 209, 163 N.E.2d 367 [10 O.O.2d 164];Travelers Indemnity Co. v. Cochrane, supra; Schaefer v. First Natl. Bank
(1938), 134 Ohio St. 511, 18 N.E.2d 263 [13 O.O. 129]; HarleysvilleMut. Ins. Co. v. Santora (1982), 3 Ohio App.3d 257, 444 N.E.2d 1076; R.C. 2721.10 and 2311.04. The courts of other states which have also enacted the Uniform Declaratory Judgments Act have consistently held that the right to a jury trial exists in such an action. See Annotation (1950), 13 A.L.R.2d. Where the issues for resolution are legal rather than equitable, attempts to circumvent the right to a jury trial by the filing of complaints which facially sound in equity have been rejected by the courts. Gordon v. Continental Cas. Co. (1983), 91 A.D.2d 987,457 N.Y.S.2d 844; Utica Mut. Ins. Co. v. Beers Chevrolet Co. (1937),250 A.D. 348, 294 N.Y.S. 82; American Employers Ins. Co. v. Wentworth
(1939), 90 N.H. 112, 5 A.2d 265. The right to a jury trial depends on the issues involved rather than the form in which they are presented."
 {¶ 76} We conclude that the First Assignment of Error in 2004CA0110 as to the lack of a jury as to Phase I is not well taken.
 II, III {¶ 77} The decisions reached by the court in Phase I in the bench trial discussed under the First Assignment and the issues of the Second and Third Assignments in the appeal in 2004CA0110 are interrelated and therefore the Second and Third Assignments will be addressed jointly.
 {¶ 78} The Second Assignment raises the issue of manifest weight of the evidence supporting the conclusions reached.
 {¶ 79} In reviewing the records to the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Statev. Martin (1983), 20 Ohio App.3d 172. See also, State v. Thompkins
(1997), 78 Ohio St.3d 380. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 80} The Third Assignment asserts that the decision is contrary to law. This Assignment is correct and therefore affects legal conclusions reached in the First and Second Assignments.
 {¶ 81} Clearly, the sons, E. Clark Swank and Robert L. Swank, Appellees in 2004CA0110 not only anticipated receiving farm land after the deaths of their parents but also prayed that they receive such land prior thereto. The question of whether the farms, if received, had value is inconsequential to the issue as to whether an enforceable claim existed.
 {¶ 82} R.C. 2107.04 states:
 {¶ 83} "No agreement to make a will or to make a devise or bequest by will shall be enforceable unless it is in writing. Such agreement must be signed by the maker or by some other person at such maker's express direction. If signed by a person other than such maker, the instrument must be subscribed by two or more competent witnesses who heard such maker acknowledge that it was signed at his direction."
 {¶ 84} The Ohio Supreme Court in referencing the General Code predecessor to R.C. 2107.04 stated in Snyder v. Ward (1949),151 Ohio St. 426:
 {¶ 85} "Delivery of possession, if referable to contract, will take oral contract concerning lands out of statute of frauds, but payment of consideration, even if consideration consists of personal services, will not take such contract out of the statute. Gen. Code, §§ 8620, 8621.
 {¶ 86} "An oral contract to make will is unenforceable by virtue of statute of frauds, and payment of consideration by one in whose favor the contract is made, whether that payment consists of money or pecuniarily compensable services, will not remove such contract from operation of statute. Gen. Code, § 10504-3a.
 {¶ 87} "A contract of employer to make will in favor of employee was unenforceable under statute of frauds where there was no written memorandum and consideration furnished by employee consisted of personal services which was work of a type compensable in money either on contract or on quantum meruit, notwithstanding that performance of all such services by one person might complicate calculation of value of services and that feelings of kindness, generosity and friendship existed on part of employer toward employee. Gen. Code, § 10504-3a."
 {¶ 88} Again, in Sherman v. Johnson, Katafiasz v. Glemp (1953),159 Ohio St. 209, the Supreme Court held:
 {¶ 89} "An agreement to convey by deed or will effective after death is an agreement to make a will or to make a devise by will within statute declaring an agreement to make a will or to make a devise or bequest by will to be unenforceable unless in writing. Gen. Code, § 10504-3a."
 {¶ 90} In the case sub judice, the court found that no partnership had been created. Such finding is not the subject of this appeal.
 {¶ 91} The conclusion that Appellees E. Clark and Robert had an oral contractual interest in the farms is an unenforceable contract to make a Will as no present interest, by partnership or otherwise is supported by the evidence. This decision is contrary to R.C. 2107.04 notwithstanding a potential argument of fairness or equity.
 {¶ 92} We therefore sustain the Second and Third Assignments of Error.
 (2004CA0111) I(A)(B), II {¶ 93} The Assignments of Error 1(A), 1(B) and II in appellate Case No. 2004CA0111 are denied due to the rulings of 2004CA0110 set forth heretofore.
 III {¶ 94} The Third Assignment of Error as to dismissal of Rheabelle Swank and the Estate of Freeman Swank, Sr. is sustained in that the merits of alleged claims other than that of entitlement to a present interest in the parent's real estate need to be addressed and also, due to consolidation of Case Nos. 96-254-H, 96-228-H and 96-501-D, additional issues are raised as to chattels. Further, the presence as parties of Rheabelle Swank and her husband's estate may be of consequence relating to unjust enrichment, sale of chattels and the assertion of interference with the expectancy of inheritance of Robert and E. Clark by Freeman Swank, Jr.
 {¶ 95} The tort of interference with expectancy of inheritance was recognized by the Ohio Supreme Court in Firestone v. Galbreath (1993),67 Ohio St.3d 87, which stated:
 {¶ 96} "Ohio recognizes tort of intentional interference with expectancy of inheritance.
 {¶ 97} "Any person who can prove elements of tort of intentional interference with expectancy of inheritance has right to maintain cause of action.
 {¶ 98} "Elements of tort of intentional interference with expectancy of inheritance are: existence of expectancy of inheritance in plaintiff; intentional interference by defendant with that expectancy of inheritance; conduct by defendant involving interference which is tortious, such as fraud, duress or undue influence, in nature; reasonable certainty that expectancy of inheritance would have been realized, but for interference by defendant; and damage resulting from interference."
 (2004CA0112) I {¶ 99} As to the First Assignment in case 2004CA0112, that aspect relative to the claimed interest in the real estate is sustained due to the prior ruling herein. As to the farm chattels, such Assignment is sustained as the basis for such interest must be reconsidered in light of the claim of purchasing by the two sons of cattle and livestock.
 II {¶ 100} The Second Assignment as to denial of a jury trial in Phase I is rejected due to the ruling in 2004CA0110.
 {¶ 101} In regard to the lack of a jury trial in Phase II, such Assignment is sustained as the court in its Phase I ruling indicated such would occur and the merits of certain legal issues other than the farm land valuations and shares therein need to be considered.
 III, IV {¶ 102} The identical Third and Fourth Assignments of Error in 2004CA0112 are sustained due to the prior rulings herein.
 V {¶ 103} The Fifth Assignment of Error is sustained as the prior holdings herein would negate the court's ruling as to merger of subordinate interests.
 VI {¶ 104} The Sixth Assignment is not well taken as the court specifically made Findings of Fact and Conclusions of Law in the decisions with respect to both Phase I and Phase II.
 VII {¶ 105} The Seventh Assignment consists of a charge of abuse of discretion in denial of a continuance.
 {¶ 106} The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial court. State v.Unger (1981), 67 Ohio St.2d 65. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 107} We find no abuse of discretion or error in denial of the requested continuance.
 {¶ 108} The Seventh Assignment of 2004CA0112 is denied.
 {¶ 109} These appeals are affirmed in part, reversed in part and remanded for further proceedings consistent herewith.
 {¶ 110} Costs to be divided as to each appeal equally among the several Appellants and Appellees.
Boggins, P.J., Gwin, J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed in part, reversed in part and remanded.
Costs to be divided as to each appeal equally among the several Appellants and Appellees